Icle Nadyne KIMBLE, Plaintiff-Appellant,

v.

Forrest Lavern KIMBLE, Defendant-Respondent.

No. 24399.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1966.

Walter A. Raymond and Raymond, West & Cochrane, Kansas City, for appellant.

Len L. Balke, Kansas City, for respondent.

MAUGHMER, Commissioner.

By this appeal we are required to review a judgment order under which the custody of a girl twelve years old was transferred from the mother to the father.

On September 15, 1959, plaintiff Icie Nadyne Kimble, filed in the Circuit Court of Jackson County, Missouri, her petition for divorce from the defendant Forrest Lavern Kimble. At that time four children had been born of the marriage, namely, Vickie Nadyne, then age seven years; Charisse Lynn, age five years; Gerald Lavern, age two years, and Tommie LeAnn, age eight months. The defendant was an employee of the Bendix Corporation, with a salary of $6,000 per annum, Mrs. Kimble, the mother of these four children—all of tender age—was almost of necessity, a housewife and mother. To this divorce action defendant filed his written entry of appearance, defaulted, and on October 22, 1959, a decree of divorce to plaintiff was entered. By that decree Mrs. Kimble was granted the "care, custody and control" of the four minor children, $45 per week for their support and maintenance, and $1.00 per month alimony. Shortly thereafter, a stipulation for termination of alimony was filed and thus the alimony issue was eliminated.

On June 3, 1965—more than 67 months after the divorce—defendant filed his motion to modify. Therein he alleged a change in conditions and asked that the custody of all four children be transferred to him. Plaintiff countered with a request for an increase to $75 per week in the child support allowance. Testimony was heard on June 25, 1965. We shall summarize the events, changes and happenings which had occurred with respect to this Kimble family of six persons during the preceding five and one-half years as shown by the evidence.

Mr. Kimble had continued to work for Bendix. His earnings increased from $6,000 to $10,000 per year. For a period of time he lived and worked in Chicago, but at the time of the hearing he was again residing in the Kansas City area. He had remarried, was the father of one child by his second marriage, with another expected

within thirty days. He had purchased and was living in a nice four-bedroom house.

There had been changes in the life of Mrs. Kimble. She continued to live in the Kansas City area. For several years she had been, and at the time of the hearing was, employed as a real estate saleswoman on a commission basis, by Roark Realty, Inc. She has enjoyed some success in this vocation as evidenced by the fact that in 1964, she earned $6400. She has bought a three-bedroom residence property, where the family resides, on contract with payments of $104 monthly. Her busiest business periods are on week-ends. She is required to be away from home showing properties, checking records and closing sales. At the time of the modification order entered herein she had in her employ a full time combination housekeeper, maid and baby sitter, who lived in the home and whom she paid $40 per week, or almost all she received from the children's father for child support. Previously, she had used part-time and "live-away" attendants for the children. At times responsibility for attending to the needs of the three smaller children fell upon Vickie, the eldest child.

Although complete custody under the divorce decree was vested with the mother, the children through the years were permitted to and on occasions did visit their father and also their paternal grandparents. Quite frequently they spent week-ends in their father's home, although recently some difficulties arose between the parents and that practice stopped. Once they visited defendant in his home near Chicago for eleven days.

The paternal grandparents live in the town of Adrian, Missouri. They have a large house and the children visited them during the summers of most of the years, sometimes staying for a month.

The two eldest children testified at the modification hearing. Vickie, then twelve years old, described spending week-ends with her father and visiting him in Chicago. She spoke of going to Adrian to the home of her grandparents. She said she was well treated by her stepmother, and liked to visit her grandparents. She said the children were frequently left alone in the evenings; that she prepared them for school at times; that most times her mother prepared supper, but not always. She said a maid was in the house most of the times when her mother was gone. She was "upset" when left alone with the children. She stated that she was unhappy and thought she would be happier with her father and his second family. Replying to questions, Vickie said she had no complaints as to her mother's treatment; that she was well fed and received medical attention. She said she "loved" her father and "sort of loved" her mother. She got along well with her little sisters and her brother, and she did not want to leave them.

Charisse, then eleven years old, was lonesome sometimes. She liked her mother, her father and her grandparents. She had no complaints as to the mother's treatment.

The paternal grandparents, the present Mrs. Kimble and the defendant all testified. They all are apparently good people, have suitable homes and treat the children well. There was a suggestion that plaintiff improperly and too frequently associated with her employer, Mr. Roark, but the evidence did not bear out the accusation to any defamatory degree.

After hearing the evidence, the court modified the original decree in the following particulars:

(1) Care, custody and control of Vickie, the eldest child, was changed from the mother to the father "with reasonable visitation" rights.

(2) Custody of the other three children was continued with the mother except as to week-ends "from Friday until 8:00 p. m. Sunday" when custody was placed with the father.

(3) The child support allowance of $45 per week was left unchanged. Plaintiff's attorney was allowed a $150 fee and no

order was made regarding visiting the grandparents during the summer.

The mother has appealed from that part of the order transferring the custody of Vickie from the mother to the father.

In reviewing a divorce case or modification order changing child custody it is our duty on appeal to review all of the evidence and reach our own conclusions. We give due deference to the findings of the trial judge, but we render such judgment as in our opinion the evidence warrants. Hamilton v. Atwill, Mo.App., 130 S.W.2d 640, 649; Elliston v. Elliston, Mo. App., 215 S.W.2d 63, 69; Rusche v. Rusche, Mo.App., 200 S.W.2d 577, 580. Where credibility of the witnesses is an issue and a vital point, we recognize the trial court's more advantageous position from which to judge credibility. Crowley v. Crowley, Mo. App., 360 S.W.2d 293, 297. Always the movant (here the defendant father) has the burden to show first, a change in conditions since entry of the divorce decree and, second, that such changes compel or at least make advisable, for the welfare of the children, a change of custody. Montgomery v. Montgomery, Mo.App., 257 S.W.2d 189; Cherry v. Cherry, Mo.App., 272 S.W.2d 700, 703; Lewis v. Lewis, Mo.App., 301 S.W.2d 861, 865.

A reading of the modification order here alerts us at once to several danger signals:

(1) The mother's home, where the four children have lived for nearly six years, is ruled not the proper home for one child, but a proper home for the other three.

(2) The father's home is determined to be the best and necessary home for one child but not for the other three.

(3) A family of four children, who have been reared together for almost six years after the divorce, are separated and divided into groups of one and three.

As we read and consider the evidence and the trial court's statement announcing the transfer of Vickie's custody, we are forced to conclude that it did so, almost, if not entirely, because of the rather uncertainly expressed desire of Vickie, a twelve year old child. There is no substantial proof that the mother misbehaved; that her home was not a good home—or inadequate—or that the children were mistreated or poorly cared for. It affirmatively appears they were doing well in school and were being furnished with life's essential necessities. The court's action in leaving three of the children with the mother makes it appear implicit in the decision that it did not believe the mother's home was an improper home.

We have here a comparatively young couple who, in 1959, were divorced. They had brought four children into the world then ranging in ages from eight months to seven years. The father said he asked the mother to get a divorce. He entered his written appearance, defaulted, and did not contest the divorce action. He persuaded his wife to waive alimony. He did not raise his voice in protest when she was awarded custody and accepted responsibility for the actual rearing of their four children. He paid $45 per week for their support in 1959. The dollar is worth less now than then, and as the children grow up their dollar requirements are greater, but the support allowance has remained stationary. Mrs. Kimble, in an effort to surmount these increased financial burdens, secured employment as a real estate saleswoman and in 1964, earned $6400 in commissions. She has bought a residence property as a home for herself and the children and is paying for it at the rate of $104 per month. She could not do this and rear the children on the child support payments received from the children's father.

In Hamilton v. Atwill, supra, the mother, after the divorce decree, had prepared herself to become a school teacher and was actually employed in that profession at the time the modification hearing was held. At page 650 of the opinion this court said:

"The showing of the record we conclude, is to the effect that plaintiff

* * * had, by laudable effort, better equipped herself to look after the welfare of her minor children than when the original order was made".

Mrs. Kimble has not remarried. Manifestly, she cannot work as she does and be with the children all of the time. The father works too. He could not be with them all the time either. Mr. Kimble has married again and has now fathered two more children. We believe Mrs. Kimble should be commended for the way in which she has assumed, accepted and discharged her parental responsibilities. Has Mr. Kimble done more? We think not, although we do not criticize his actions. The fact remains, however, that for almost six years the mother has cared for and reared these children. During those six years the father uttered no protest and sought no change in custody.

It is the law and also reason that child custody shall not be changed for trivial reasons and the party seeking such change carries the burden of showing a change is necessary for the welfare and best interests of the children. We believe the evidence shows that the mother now maintains and has always maintained a good, suitable and proper home for these children. It is apparent that the trial court so found, else the other three children would not have been left with the mother. We do not believe that the decision as to child custody can safely be left to the choice of a twelve year old girl and be changed from time to time in conformity with her temporary desires or whims. We do not believe these four children should be separated for this reason alone or for any other reason unless it be a grave one. Besides, this girl, Vickie, says she likes her mother, says she was well fed, well housed and received good care. She was doing well in school and was not really, as we understand the evidence, in need of a change. The court suggested that Vickie was a "disturbed child", was lonesome and felt neglected, although it was questionable if such feeling was justified. We cannot conclude from the testimony she was any more "disturbed" than is the average adolescent.

The writer of this opinion is strongly inclined toward giving due deference to the finding of the trial chancellor and prefers to approve his orders. But in the case before us the evidence is not vitally disputed. The ultimate decision does not rest upon the credibility of the witnesses. In awarding custody of minor children the over-all welfare of the children is paramount Custody should not be granted as a reward for one parent and it should not be withheld as a punishment to one parent. It is unwise to transfer custody frequently and not at all unless it is demonstrated by a preponderance of the evidence that the continued well-being of the child requires a change.

We have before us a family which originally consisted of the father, the mother and four children. Six years ago the parents were divorced. During these six years the father has been (of necessity) a part-time father. During these six years, inside the domicile, the de facto family has consisted of the mother and the four children. The three little girls and the little boy have so far grown up together. This is something that each will cherish and value always—more and more as the years pass. Is it likely that Vickie and the other children will be better off if Vickie from now on lives with her father, her step-mother, her half sisters and brothers, and is separated from her own mother, brother and sisters?

From the evidence adduced we are unable to conclude:

(1) That the mother has not provided a good and salutary home.

(2) That the mother is not a suitable person to continue to have custody of all four of the children.

(3) That the movant has sustained the burden of showing it would be for the

best interests of the four children, or of any one of them, for custody to be taken from the mother and placed with the movant.

It is to the credit of these parties that the children have been permitted to visit their father on week-ends and the grandparents during the summer vacation periods. It is possibly too much to expect these parents to carry out the details of such visitations amicably at all times without court direction. In Lewis v. Lewis, supra, 301 S.W.2d page 863, the court commented:

"Where the father and mother are proper persons, both are not only entitled to reasonable access to their children, but the best interests of the children will in fact be served by an arrangement whereby they may associate with both parents".

We are not informed as to the age and present health of the grandparents, nor do we know if the children, as they grow older, will still enjoy visiting them during the summers. If they do, we suggest that they be permitted to do so.

No appeal is before us as to those portions of the modification order allowing plaintiff an attorney fee of $150, and continuing the allowance of $45 per week for support of the children. That part of the order transferring the custody of Vickie Nadyne Kimble from plaintiff to defendant is reversed and the court is directed to enter a judgment, decreeing that her custody be continued with the mother, Icie Nadyne Kimble. The court is further directed to order that defendant father have visitation custody of all four children from approximately 5:00 p. m. on each Friday until 8:00 p. m. on the ensuing Sunday of each week.

The judgment is affirmed in part and reversed in part. The cause is remanded with directions to enter a new judgment order in conformity with this opinion.

SPERRY, C., concurs.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.