Lowell K. WOOD, (Plaintiff) Respondent,

v.

Nancy V. WOOD, (Defendant) Appellant.

No. 32121.

St. Louis Court of Appeals.

Missouri.

Feb. 15, 1966.

Milton F. Napier, Claude W. McElwee, St. Louis, for appellant.

Shaw, Hanks & · Bornschein, Claude Hanks, Clayton, for respondent.

RUDDY, Judge.

This is an appeal from a final order and judgment modifying a previous order and judgment entered on January 11, 1963, changing the custody of the minor child of the parties herein.

This is not the first appeal by the parties herein regarding the custody and support of their minor child. In a previous appeal taken by the defendant (wife) herein, Mo. App., 378 S.W.2d 237, we pointed out that the minor child herein has been the subject of repeated proceedings between the parties since the original decree of divorce was granted to defendant on January 14, 1959. In the original decree of divorce the custody of the child was awarded to defendant, and certain rights of temporary custody were given to plaintiff. Subsequently, by either contested proceedings or by stipulations consenting thereto, the original decree with respect to custody and child support was modified by orders made on July 11, 1960, November 3rd, 1961, and January 11, 1963. The pertinent parts of the order made on the last mentioned date are as follows:

"It is ordered by the Court, *by consent of the parties hereto,* that the decree of divorce rendered herein on the 14th day of January, 1959, * * * and as modified on the 11th day of July, 1960, * * * and as modified on the 3rd day of November, 1961, * * * be again modified, so that from the date hereof, the plaintiff shall have the exclusive and undisturbed custody of the minor child named Lowell K. Wood, Jr., during the present school term until the middle of the vacation period of 1963; beginning with the middle of the vacation period of 1963, defendant shall have the custody of said child until the middle of the vacation period of 1964, and each party to have successive rights of custody, alternately thereafter, until the further order of the Court.

"It is further ordered, adjudged and decreed by the Court that the plaintiff and defendant shall have the temporary custody of said minor child on alter-

nate weekends from 9:00 A.M. Saturday to 6 P.M. Sunday, except during the summer vacation periods when each party shall have unrestricted and undisturbed custody of said minor child, until the further order of the Court."

On the 7th day of June, 1963, plaintiff filed a motion to modify the order and judgment of January 11, 1963, modifying the original decree of divorce. On July 12, 1963, the trial court sustained plaintiff's motion to modify filed on June 7, 1963. Defendant took an appeal from this order and judgment to this court. We reversed the order and judgment entered by the trial court and remanded the cause for a new trial before another Judge. See our opinion Wood v. Wood, Mo.App., 378 S.W.2d 237.

After plaintiff's motion to modify, filed on June 7, 1963, was reinstated upon the trial court's docket, plaintiff filed an amended motion to modify on June 20, 1964, and on July 14, 1964, and July 26, 1964, amended his amended motion by interlineation. We deem it unnecessary to recite the allegations of plaintiff's amended motion to modify as amended by interlineation. After a hearing on plaintiff's amended motion to modify, the trial court on July 31, 1964, entered its order and judgment sustaining plaintiff's amended motion to modify and modified the previous order and judgment entered on January 11, 1963, by awarding the plaintiff the care, custody and control of Lowell K. Wood, Jr., the minor child of the parties, until the further order of the court. The court further ordered and adjudged that the defendant shall have temporary custody of said minor child on the first and third weekends of each month at stated times and for and during the first 21 days in August of each year, and further ordered and adjudged temporary custody of said minor child during certain holiday periods of each year. The court made a further order and judgment regarding support and maintenance during some of the periods the child would

be in the custody of the defendant, the details of which we need not recite here. As we have said, it is from this order that defendant has taken the appeal.

It appears from the record herein that the plaintiff-father had the custody of the child from January 11, 1963, until the 15th day of July, 1964, when the child was turned over to the defendant, just 12 days before the testimony was heard in the instant matter on appeal. The minor child herein, Lowell K. Wood, Jr., was frequently referred to as "Chipper" by both parents in the course of their testimony. The child was 10 years old at the time of the trial and was living with the plaintiff-father and his wife (plaintiff married again) at plaintiff's residence located at 2545 Clifton Avenue in St. Louis, Missouri. During the period of approximately one and one-half years that the child was with the plaintiff, Chipper attended the Epiphany School and Church. The plaintiff lived within the boundaries of the Epiphany parish and both plaintiff and the minor child would attend Epiphany Church every Sunday. It appears that on the occasion when the child was with the defendant-mother they attended church at either St. Anthony's or St. Pius Church, the latter church being about three or four miles from the home of plaintiff. The child did very well at Epiphany School. His report card showed four "E's" and one "U." The child testified that the one "U" was for "keeping my desk clean." The child always had good grades in school. While attending Epiphany School the plaintiff would take the child to the school in the morning and plaintiff's wife would pick the child up in her automobile at the close of the school day. The child belonged to the Cub Scouts and plaintiff's wife would take him to the den meetings. This continued until the den meetings were held in a home across the street from the plaintiff's home.

Defendant-mother testified that the boy was a member of the Cub Scouts before he went to live with his father in Jan-

uary, 1963. The mother of Chipper owns property at 3020 Cherokee Street in St. Louis, which property consists of two apartments on the first floor that are rented out and a five room apartment on the second floor, consisting of a living room, a dining room, two bedrooms, a kitchen and a bath. The second floor apartment is occupied by the defendant and no one else lives with her except the child when he was there on visit. She testified that she occupied the back bedroom and that when the child was with her he would occupy the front bedroom. However, during the period the child was with her immediately before the hearing, the child shared the back bedroom with her and she and the child slept together. The need for the child sleeping in the back bedroom with her was occasioned by the painting and remodeling of the front bedroom.

Defendant owns and operates a beauty shop on Cherokee Street and it is located very close to the home of defendant. Her daughter, by a previous marriage, Nancy, is employed by her. Defendant operates the beauty shop two full days and a part of three days and remains open two evenings a week until 6 P.M. She testified that the shop is closed on Mondays and on Tuesdays. On Wednesdays she is finished by noon and on Saturdays she is finished between three and four-thirty P.M. Whenever the child was with his mother, the defendant herein, he stayed either in the beauty shop or in defendant's home during the time defendant was working. When he stayed in defendant's home he was either alone or with a little girl, named Tammy, who the child said was 10 years of age. During the time the child was with his father, the plaintiff herein, he visited his mother on Saturdays and Sundays and spent Saturday nights with his mother. When the child would visit his mother he would either watch television with her or they *would go to* a movie together. The child testified that on one occasion he attended the Ice Follies, accompanied by his

mother and Art Pendelli. When the child would visit his mother on a number of occasions, Mr. Pendelli drove the child and the mother to church on Sundays and drove them home from church. On one occasion the child, his mother and Mr. Pendelli went on a fishing trip. This fishing trip was the result of Mr. Pendelli learning of the child's interest in fishing. No one visited the mother in her apartment when the child was there, except on several occasions when the man, who the boy said "worked downstairs," would come up to the mother's apartment and remain 10 or 15 minutes.

On several occasions when the child arrived to spend a weekend with his mother she was not at home when he got there and the child would be returned later. The mother explained that on one of these occasions she had been painting next door and at other times she was shopping for groceries. On some occasions when the child would arrive and the mother was not home, he would stay in the mother's apartment with Nancy, the daughter of the mother, who was 19 or 20 years old and married at the time of the trial. On one occasion while waiting for the mother to return from a shopping tour the child stayed in a pool hall with Nancy for approximately 25 minutes until the mother's return. This pool hall is located next door to the mother's beauty shop and while waiting in the pool hall Nancy engaged in a game of pool with three boys. There is no showing that the child ever played pool there.

It is apparent from what we have said that the child testified in this case, which was regrettable, but apparently his testimony was needed in order to prove some statements made by the mother to the child about the father. In the course of the boy's testimony he said that on one occasion his mother said his father was lower than "whale shit." He further testified that his mother said that "you would be better off dead than grow up like your father," and she also said, "didn't I think

it would be unfair and stuff like that, by going with dad." On another occasion when talking about the father, the boy testified the mother said to him, "you're going to grow up just like your father." He further testified that she told him he would be better off if he went to a military school and not be with "neither one of them." He testified that his mother said he would be better off with her and that he told his mother that "I wanted to go with my dad." He said he talked with his mother over the telephone and face to face about living with his dad, and that when he would tell his mother on the telephone that he wanted to go with his father, she would hang up the phone.

In the couple of days prior to his testimony his mother kept asking him if he thought it was fair saying he wanted to go with his dad. He was asked: "Q. Had she said anything about not wanting you after today after you testified? A. Yes, sir. * * * Well, if I went to live with my dad she said she didn't want me on the weekends or on my August—* *."

In his direct examination the child was asked if he ever had any discussion with his mother concerning the treatment that his father gave him and he answered "Yes, sir." When asked the course of these discussions, he answered, "Stuff like, well, she said that in every divorce case every side tries to get, you know, like the best of the kid, on the best side, and it's like when the one feeds the candy last, that's the side you're on, that's what she said to me." He further testified that on his birthday his mother did not call him on the telephone, did not send him a birthday card and did not send him any presents, and indicated that she has not given him anything for his birthday. However, on cross-examination he admitted that his mother did talk to him about buying a bicycle for him. She told him that when he came to live with her, she would get him a bicycle.

The testimony given by Lowell K. Wood, Sr., the plaintiff herein, showed that he is in the real estate business and is now married, living at the residence heretofore indicated. He said that his former wife told him, "You can have him (the child) forever if you get custody. I won't take him on weekends or vacations or anything if the Judge gives him back to you." Defendant told him she did not want to see the boy again if he won custody in the courts. When plaintiff told defendant that if he gets custody she would have the boy on weekends and on his vacation in August, she then said, "No, I don't want him on weekends or vacation. I never want to see him again." Plaintiff lives in a five room home with a reception hall and an extra bedroom in the basement. Chipper, the child, has a room to himself. His present wife does not work and when he is at work his present wife takes care of Chipper and this has been going on during the last two years.

Nancy V. Wood, mother of the child and defendant herein, testified that at the time of the hearing that resulted in the order and judgment of the court which was reversed by this court, she had rented a seven room home on a half acre of ground in the County of St. Louis, stating she wanted a nice home in a nice neighborhood for the boy if she received custody. She has been in the beauty shop business 20 to 21 years and has been in it constantly since she obtained the divorce. When she was asked if she had the conversation with her husband wherein she was reported to have said that she did not want to see the boy again if the court granted the custody to the plaintiff, she said, "it was not that way," answering: "Mr. Wood said something about the boy going back and forth, back and forth from school to school, and I agreed it was not good for the child, but as far as me never wanting to see the child again, that is untrue." She denied that she made any such statement to the plaintiff or the child. She said that if she was permitted to keep the alternate custody, as provided in the order and judgment of January 11, 1963, she would send the boy

to a parochial school. She testified that she had suggested to the plaintiff that the boy be put in St. Pius School, which is one block from plaintiff's office, and that then the child could go to the same school when he is with the defendant, as well as when he is in plaintiff's custody, and there would be no necessity for changing schools. She said that the plaintiff refused to agree to this. She denied that she ever cursed in the presence of her boy and denied that she told the boy he would be better off dead than with his father. She said the boy told her that he loved both his mother and his father, but that, "he said he would rather live at his father's house because of all the little friends over there. He has two dogs over there and he would miss them, and the only time he misses me is when he goes to bed at night." She admitted that she, the boy and Mr. Pendelli attended the Ice Capades together and that Mr. Pendelli on quite a number of occasions took them to and from church on Sunday mornings and on one occasion took her and the boy on a fishing trip. She said she bought the boy "a whole bunch" of presents, and wanted to buy him a bicycle on one weekend when he came to see her and the boy said, "No, we'll get it later." She said she bought him almost $50 worth of clothing and said she did not send him a birthday card because she did not want to bother him when he was with his father.

Most of the points relied on by defendant contain abstract principles of law and are insufficient to present anything for review. We add, however, that we do agree with the principles of law enunciated by defendant in her brief and in her points relied on. In the remaining points relied on by defendant she contends that the plaintiff has failed to adduce sufficient substantial evidence showing that since the rendition of the last final order and judgment a change has occurred in the circumstances affecting the child's welfare.

In the briefs of the parties herein we discern no real dispute between them concerning the applicable principles of law and the duty of this court in a proceeding of this nature. We stated the applicable principles of law in connection with our duty in reviewing these matters in the cases of Neustaedter v. Neustaedter, Mo.App., 305 S.W.2d 40, and Patterson v. Patterson, Mo.App., 375 S.W.2d 614. In those cases we merely reiterated what has been said in a multitude of other cases that it is our duty to review the whole record and we must decide the matter before us on its merits, having uppermost in mind the predominant rule that the best interests of the child must be served. Also, we must be mindful that plaintiff had the duty and the burden to show changed circumstances and conditions since the last modification as to custody and must show by a preponderance of the credible evidence that there has occurred changed facts and circumstances which, in the best interests of the child, requires a modification of the last order and judgment of custody. The welfare of the child is without exception the basic and principal consideration to which the parents' own wishes and personal desires must yield if opposed to such welfare. Due regard should be given by us to the opportunity of the trial court to judge of the credibility of the witnesses, therefore, we should accord a proper deference to the findings of the trial court on disputed questions of fact where matters of credibility of witnesses are involved. The child is not to be given as a reward to one parent nor is it to be withheld as a punishment to the other parent.

The determination of the proper custody of a child in these proceedings always presents a difficult problem. There are no fixed and clear rules to be followed and each case must be judged according to its own particular facts, constantly having in mind that it is the duty of the court to give primacy to the welfare of the child. We do not disturb the trial court's order and

judgment unless it is clearly erroneous and we are convinced that the welfare of the child requires some other disposition.

■ ·At the threshold of our remarks we note the order and judgment of January 11, 1963, provided that the exclusive and undisturbed custody of the minor child shall change from one parent to the other parent each year. It appears that this order and judgment was entered by the court without a hearing and merely on the consent and stipulation of the parties. We think this is a practice that should be rarely followed, if at all, by a trial court and feel that evidence should be taken to determine the propriety of the stipulation entered into by the parties and whether or not the custody provided therein serves the best interests and future welfare of the child. Generally speaking, except for good reason, the child should not be shifted periodically from one home to another and as in most instances the interest of the child is best served from a standpoint of stability if one or the other parent is given full custody with reasonable visitation rights to the other parent. The trial judge in the instant matter filed a memorandum opinion when handing down his order and judgment that is now on appeal. In this memorandum opinion he said: "It is rather evident that a regular and orderly schedule, without undue interruption, will afford numerous benefits to the minor child and provide him with an atmosphere wherein he can grow and develop in a normal and wholesome manner. Constant and continued change tends to provoke strains and tensions, which eventually may have an adverse effect, and to cause serious problems of adjustment." We agree with the trial court's observations in this connection and feel certain that the alternate custody as provided in the order and judgment of January 11, 1963, surrounds the child with a climate of instability.

■ We think the matter of the child's increased age since the time of the entry of the last order and judgment of custody is a change in circumstances that the trial court may take into consideration, particularly ·under the facts of this case where the child will shortly enter his adolescent years and shortly thereafter will approach young manhood. The next 7 or 8 years of the life of this child are the highly important years in which the character, stability, morality and other virtues needed for full maturity will be formed. It is highly important that through these years he be raised in an atmosphere of serenity and stability. As a matter of fact the mother agrees that it is bad for the boy to be shunted back and forth between the parents, in alternate periods of full custody. We, too, think it is bad for the child.

■ We think, in this same area, that the court made the proper decision in granting the permanent custody to the plaintiff-father. While defendant contends that we should not consider the fact that the father has had the child for a continuous period of one and one-half years prior to the hearing, because it was his duty under the order and judgment of January 11, 1963, to turn the child over to the defendant in the summer of 1963, nevertheless, when considering that which is for the best interest and future welfare of the child, the happenings during this period deserve consideration. During this period of time the child was attending Epiphany School and obviously doing exceedingly well and any change at this time would require attendance at another school. However, a more compelling reason for granting the custody to the plaintiff-father is that the child will have full time adult supervision, inasmuch as the plaintiff has again married, and the present relationship of the child with plaintiff's wife has in no way been discredited or attacked. On the other hand, if the custody is given to the defendant, the child would be lacking this supervision during certain days because the defendant is employed in the operation of a beauty

parlor. Under these circumstances it would be necessary for the defendant to hire some sort of supervision while she is operating her beauty parlor or permit the child to go about unsupervised. As between the two homes, it is quite obvious that the home of the father would best serve the child's interest and future welfare. It is difficult for a court to make these decisions and we realize that there is greater difficulty on the part of the defendant herein to accept this determination, but she must realize, as we have pointed out, that it is the aim of the law and those administering the law to serve primarily the best interest of the child.

Also, if plaintiff's evidence is to be believed, then plaintiff has shown that there is other evidence showing that a change has occurred in the circumstances affecting the child's welfare. Plaintiff's evidence showed a rather steady effort on the part of the defendant to estrange the child from plaintiff and to demean and downgrade the father in the eyes of the child; not realizing that in doing this she was building up in the mind of the child a disrespect for authority. In at least one instance her remark was of a highly vulgar nature and should never have been made. We do not mean to infer that the evidence shows the mother to be unfit, but these statements made to the child by her would in no manner serve the child's interests and would rather have the opposite effect.

Defendant seems to contend that the trial court took into consideration the wishes of the child. We find no support in the record for this contention.

We think the plaintiff has supported his motion and has established material changes of circumstances and that the award of the child's custody to him will be in the best interests of the child. It is our duty to defer to the finding and judgment of the trial court unless it is clearly erroneous and discloses a manifest abuse of judicial discre-

tion. We find no error and no abuse of discretion.

The order and judgment of the trial court is affirmed.

WOLFE, P. J., and ANDERSON, J., concur.