Toby N. TAYLOR, Appellant-Respondent,
Respondent-Appellant,

v.

Ella Van TAYLOR, n/k/a Ella Van
Nesiba, Respondent-Appellant,
Appellant-Respondent.

Nos. 37327 and 37338.

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 15, 1977.

Jack Gallego, Troy, for appellant-respondent, respondent-appellant.

Niedner, Moerschel, Ahlheim & Bodeux, Reginald P. Bodeux, St. Charles, for respondent-appellant, appellant-respondent.

NORWIN D. HOUSER, Special Judge.

Appeal by Ella, natural mother of Todd and Christopher, aged 8 and 10 years, respectively, from an order modifying the custody provisions of the original decree of February 13, 1970 divorcing Ella and Toby.

The 1970 decree awarded Ella primary custody of the children, giving Toby temporary custody on alternate weekends from Saturday morning until Sunday evening and two weeks in the summer. Both parents lived in Missouri. Toby remarried in 1970. Ella remarried in 1973. Both new spouses came to these marriages with children from former marriages. Ella's second husband graduated from a chiropractic college in Missouri in September, 1974. Having vacationed in Maine in July, 1974 and having then investigated the possibilities of practicing in that state he took the Maine qualifying examination shortly after graduation, passed it, bought a house in Maine and established himself there in the practice of chiropractic. When the couple moved to Maine they took Todd and Christopher with them without Ella having first obtained a court order authorizing her to take the children outside Missouri. From Maine Ella wrote Toby, telling him of her move. He promptly filed a motion to modify the custody decree, seeking an order transferring custody to him. Ella filed a countermotion, seeking modification to grant her permission to remove the children from the state.

Extensive testimony was heard on the motions, which were consolidated for trial.

Toby, Ella, their present spouses, and the two children testified at length. Toby's home in O'Fallon and Ella's home in Ellsworth, Maine, both of which are adequate and comfortable for their respective families, were described. The history of the case, the lives and relationships of the parties, spouses and children and their interactions and attitudes, before and after the move to Maine, were testified to in some detail. The pluses and minuses of the two homes, the children's associates and friends, and the schools, churches and communities, were explored.

At the conclusion of the hearing the court made an order continuing primary custody in Ella, granting her the right to remove the children from Missouri, and awarding Toby rights of visitation and temporary custody as follows: (a) custody for ten days following the trial; temporary custody during (b) the Thanksgiving school vacation, (c) one-half the Christmas-New Year vacation, but not less than 5 days, (d) the spring vacation, (e) the Easter vacation, (f) any other traditional school vacations exceeding four days in length, and (g) six consecutive weeks during the summer vacation. The order provided that Ella "pay all costs of transportation to and from [Toby's] residence, for all such periods of temporary custody in [Toby] as set forth in [the] Court's order; said costs are to be paid in advance to [Toby] and if said costs have not been paid in advance, petitioner shall have the right to deduct any such costs from the child support payments." (The child support required by the original 1970 order, not changed in 1975, requires Toby to pay Ella $25 per week for each child.) The airplane transportation costs between Maine and Missouri are "about $400" (per trip). Toby, a carpenter and house builder, averages approximately $300 per week net wages plus 10% profit when he sells a house. Ella's husband's gross revenue in June, 1975 was $1900; in July, 1975 it was $2500. Ella is an experienced legal secretary. Toby's wife is a licensed beautician. Neither woman was working at the time of the hearing; each spends her full time at home in her capacity as housewife and mother.

The propriety of the primary award of custody to Ella and the amounts awarded for child support are not in contention. The only issues for consideration on this appeal are the number of times per year the court allowed Toby temporary custody, and the assessment of all transportation costs against Ella.

Ella's first point: "The trial court erred in granting [Toby] temporary custody five times during the year since the best interests of the two minor children are not served by such frequent shifts of custody from Maine to Missouri and back." This point is sustained. This provision of the decree erroneously applies the law, which declares that "the frequent and constant shuttling of children between divorced parents residing in separate nonadjoining cities does not advance their welfare but rather tends to provoke feelings of instability and insecurity." *Stockton v. Stockton,* 459 S.W.2d 532, 535[1] (Mo.App.1970); *Wood v. Wood,* 400 S.W.2d 431 (Mo.App.1966); *Kimble v. Kimble,* 399 S.W.2d 630 (Mo.App. 1966); *JGW v. JLS,* 414 S.W.2d 352, 359[3] (Mo.App.1967); *ML v. MR,* 407 S.W.2d 600, 604[11] (Mo.App.1966). As the Court pointed out in *Stockton v. Stockton,* frequent trips from the home of one parent to the other, even for small boys riding jet airplanes, soon "lose the spice of adventure and degenerate into disquieting chores that unduly disrupt what otherwise would be orderly home and school schedules." As there noted, air travel entails the expenditure of more time than is consumed in flight "and serves to disassociate the boys from desired routines and regular companions", and "these incessant journeys deprive the children of participation in * * * organizational activities in their home community", and are too disruptive for all concerned. In *Stockton v. Stockton,* the court was considering air flights from Columbia, Missouri to Springfield, Missouri. We are here considering five or more round-trip air flights between Maine to Missouri, entailing travel from Ellsworth, Maine to the nearest airfield booking transcontinental flights, and from Lambert Airport at St. Louis to O'Fallon, Missouri, a considerable distance,

and then retracing the three legs of the journey. In *Wood v. Wood,* supra, 400 S.W.2d l.c. 437, the Court referred to the numerous benefits to a minor child who is afforded a regular and orderly schedule, without undue interruption, thus providing him with an atmosphere in which he can grow and develop in a normal and wholesome manner, whereas constant and continual change tends to provoke strains and tensions which eventually may have an adverse effect and cause serious problems of adjustment. In this case, as in that, the temporary custody provisions of the decree surround these young boys "with a climate of instability." We agree with the conclusion that generally speaking, except for good reason, a minor child "should not be shifted periodically from one home to another". *Kimble v. Kimble,* supra, 399 S.W.2d l.c. 634, where the court said it is "unwise to transfer custody frequently and not at all unless it is demonstrated by a preponderance of the evidence that the continued well-being of the child requires a change."

In view of these basic precepts and on review of the whole evidence in this case we consider that the trial court abused its discretion in setting up this frequent, inexorable, and ever-recurring flight schedule for these small boys, both of whom were obviously quite happy and contented with their lives with their family and in their home in Maine, and their school, church and community life there. Neither boy expressed a desire to make these periodic treks back to Missouri. Outside the presence of their parents both boys testified freely to a preference to living in Maine versus living in Missouri. We are evaluating the terms of a court order which, if enforced literally, would inevitably and necessarily deprive these boys of their accustomed association with the family, friends and associates of their choice during every vacation period throughout each and every school year in the future. The court is enjoined to consider the wishes of the children as to their custodian, § 452.375(2), RSMo 1969. In apportioning the time to be spent in each of

these homes we have given consideration to their wishes in this respect. Their father is genuinely interested in their welfare; they like their father, and their best welfare dictates that they receive from him the encouragement, companionship and guidance which he alone can give them, but their best welfare will not be served by frequent interruptions of their regular routine, taking them away from the home of their choice. One item of evidence with disturbing connotations is the emotional upset caused as the result of a violent fight which occurred in Toby's home while these boys were there. Several of Toby's brothers participated. This episode involved drunkenness, blows struck with pool cues and liquor bottles, and bloodshed. The adverse reaction experienced by Christopher caused him to have trouble sleeping for a long time thereafter.

All things considered, we have concluded that the best interests of the children will be served by continuing the full-time, primary custody in Ella during the entire school year, with the exception presently to be noted, and for five weeks prior to the beginning of the school term in the autumn, and to award their temporary custody to Toby for a part of the Christmas-New Year vacation period and for several weeks during the summer vacation. This solution of this perplexing and challenging problem will afford the children stability, continuity, and a measure of permanence in their regular regimen, while at the same time affording them an occasional change of pace, and time and opportunity twice a year to keep in touch with their father, to know and appreciate their other family, and to profit from their association with him and them.

■ Ella's second point: "The trial court erred in ordering [Ella] to pay transportation costs for every trip to and from [Toby's] home and that if such costs are not paid in advance, [Toby] may deduct such costs from the child support payments since: A. Custody rights and transportation costs should not be meted out with a design to reward one parent or punish another; B. There is no statutory authority for deduct-ing transportation costs from child support in such a case, the statutory remedy being citation for contempt."

That part of the order relating to costs of transportation is against the weight of the evidence, which reveals no such disparity between the economic circumstances and financial resources of Ella and Toby as to justify imposing upon Ella the entire burden of the cost of transporting the children between the two cities. The chief beneficiary of the frequent shifts of the children back and forth is Toby. Ordinarily, all other things being equal, it would seem only fair and equitable that he who receives the benefit be required to pay the cost, but under this decree the entire burden of the frequent and expensive air trips is charged to Ella, who receives no demonstrable benefit therefrom. In this respect the order was unjust and constitutes an abuse of discretion. Notwithstanding Ella improperly took the children out of the jurisdiction without first obtaining a court order authorizing their removal, we agree with her that custody rights and transportation costs should not be used as a vehicle for punishing one parent or rewarding the other. *Graves v. Wooden,* 291 S.W.2d 665, 669[3] (Mo.App.1956); *Kimble v. Kimble,* supra, 399 S.W.2d l.c. 634[6]; *Hachtel v. Hachtel,* 291 S.W.2d 201, 207[6] (Mo.App.1956). Considering all of the equities, the transportation costs should be equally divided. The order should not provide that if Ella's portion of the transportation cost is not paid in advance Toby may deduct the sum from the child support payments. The court's power in this respect derives from the statute, and there is no provision in Chapter 452 authorizing such a deduction. Under § 452.365 the remedy for failure of either parent to comply with a court order would be to "move the court to grant an appropriate order", such as an order to show cause why the offender should not be held in contempt.

Accordingly, paragraph 2 of the order of August 7, 1975 relating to the temporary custody of the children and visitation rights of Toby is vacated and set aside, and the

cause is remanded with directions to modify the order of August 7, 1975 by entering therein a new paragraph 2 awarding temporary custody of Todd and Christopher to Toby from December 26 of each year until January 2 of the following year, and temporary custody beginning ten days after school in Maine closes for the summer vacation and ending five weeks before the beginning of school sessions in the autumn. The order will direct Ella to deliver the children safely on board a regularly scheduled commercial airline for a transcontinental flight to the principal airport serving the City of St. Louis, Missouri on December 26, and again on the day summer custody begins, and will direct Toby to deliver the children safely on board the airplane for the return flights. Each parent will be directed to notify the other by mail, telephone or telegraph of the flight number, name of carrier, and scheduled time of arrival in ample time to meet the plane. Each parent will be required to pay one-half the cost of the air tickets. Toby will be granted visitation privileges during the school year, at reasonable times and places and under conditions agreeable to both parents, within the town and general area of Ellsworth, Maine. Ella will be granted visitation privileges during the summer vacation in Missouri, at reasonable times and places and under conditions agreeable to both parents, within the town and environs of O'Fallon, Missouri. Toby will be ordered to continue making payments of $25 per week for the support of each child, under the order of February 13, 1970, such payments to be made by mail to Ella, and not otherwise. These payments will not be required during the weeks the children are in the temporary custody of Toby.

It is so ordered.

SIMEONE, C. J., and ALDEN A. STOCKARD, Special Judge, concur.