Marian Ellen **GROSS**, Appellant,

v.

Isadore H. **GROSS**, Respondent.

**Nos. KCD 28585, KCD 28639.**

Missouri Court of Appeals, Kansas City District.

Oct. 11, 1977.

Motion for Rehearing and/or Transfer Denied Oct. 31, 1977.

Richard L. Colbert, Kansas City, for appellant.

David Waldman, Kansas City, for respondent.

Before SOMERVILLE, P. J., and WASSERSTROM and TURNAGE, JJ.

WASSERSTROM, Judge.

The question for determination here is the manner in which an order for division of marital property entered in a dissolution proceeding can be enforced. Under the terms of the decree entered on May 12, 1975, dissolving the marriage between Marian Gross and Isadore Gross, the family home went to Marian and she was ordered to make monthly payments due with respect to carpeting in the amount of $127.06 per month to Commerce Bank and payments on the air conditioning in the amount of $103.12 per month to Columbia Union National Bank. Among other provisions, the decree granted her maintenance of $200 per month and child support of $500 per month.

The current problem commenced when Marian refused to pay the monthly installments due to the two banks. Isadore had signed the notes to the banks, and they therefore made demand for payment upon him. He began making those payments, but understandably he desired some relief in that respect against Marian.

Accordingly, on July 31, 1975, he filed application for modification of the maintenance award to authorize him to make payments direct to the banks and deduct those payments from the sums due Marian for maintenance and support. Marian filed cross-motions "to set aside for fraud or for error coram nobis and to complete division of marital property." The basis for the latter motions were allegations by Marian that Isadore had falsely stated that the indebtednesses to the two banks existed by reason of purchase price of the household carpeting and air conditioning, whereas there were in fact no outstanding debts at either bank for carpeting and air conditioning. A hearing was held upon those motions and on August 5, 1975, Judge Murphy overruled all motions.

Following the ruling by Judge Murphy, Marian continued in her non-payment of the two bank indebtednesses. On October 28, 1975, Isadore filed a new application, this time a petition for Marian to show cause why she should not be punished for contempt of court. In response to that petition, Marian filed a cross-motion to modify the decree by increasing the amount of maintenance and child support, and she

asked that she be awarded suit money and attorney's fees.

A hearing on the petition and motions was held before Judge Randall on November 18, 1975. Evidence was taken again with respect to the legitimacy of the indebtednesses being asserted by the two banks. At the close of the hearing, Judge Randall found Marian guilty of contempt of court, suspended imposition of sentence and placed her on probation for one year on condition that she pay the sum of $1,400 (the amount of the bank indebtednesses). Isadore was authorized to withhold maintenance payments for the period of seven months, at the end of which time Isadore's obligation to pay maintenance for the seven months would be satisfied and Marian's obligation to pay the bank indebtednesses would also be satisfied. An order to that effect was entered on November 18, 1975, from which Marian duly appealed. Thereafter, on March 4, 1976, Judge Randall denied Marian's application for attorney's fees from which she filed a second appeal dated March 4, 1976.

On these consolidated appeals, Marian assigns the following as error: 1) that Judge Randall erroneously treated Judge Murphy's order dated August 5, 1975, as res judicata of her contentions made in the contempt proceeding that the bank indebtednesses were fraudulent and nonexistent; 2) that Judge Randall failed to give res judicata effect to Judge Murphy's denial to Isadore of the right to offset the maintenance payments against payments being made by him to the two banks; 3) that Judge Murphy lacked jurisdiction in making the original decree of May 12, 1975, ordering Marian to make installment payments to the two banks; 4) that the finding of contempt against Marian violated the imprisonment for debt restrictions of Article I, Sec. 2 of the Missouri Constitution, the due process clause of the Missouri Constitution, Article I, Sec. 10, and the due process clause of the 14th Amendment of the United States Constitution; 5) that Marian was not guilty of contemptuous conduct, and 6) that Judge Randall erred in denying the allowance to her of attorney's fees. Each of those points will be taken up in the order stated, except that the subject matter of point No. 2 will be considered in connection with and as part of point No. 4.

### I.

Marian argues that Judge Murphy's order on her motion to set aside for fraud or for writ of error coram nobis can be res judicata only in a subsequent action, and that the contempt proceedings cannot be considered a "subsequent action" because a proceeding for contempt is merely a continuation of the original action. That argument lacks reality. At the hearing held before Judge Murphy in August of 1975, the subject as to the legitimacy of the bank debts was fully litigated and resolved against Marian. The order entered by Judge Murphy on August 5, 1975, overruled Marian's motions constituting a final appealable order under Sec. 512.020 [1], but no appeal was taken. She should not be permitted to relitigate the same issue yet again before Judge Randall, and Judge Randall's statements to that effect during the course of the hearing were completely justified.

Nevertheless, the fact is that Judge Randall did permit full evidence to be introduced on the issue of the validity and honesty of the bank indebtednesses and did specifically determine that "the evidence in this case affirmed that there was such an obligation. The petitioner's own evidence showed that there was a refinancing of a note, which original note had been paid for this specific purpose of buying the air conditioner, so the Court, at the time of the divorce decree, ordered the petitioner to pay that indebtedness incurred to buy an air conditioner and to buy carpeting." Thus, Marian was in fact given the opportunity to relitigate the issue even though she had no right to so insist. She has no room for

---

1. All statutory references are to RSMo 1969, except the references under Chapter 452, which are to RSMo Supp. 1973.

complaint with respect to not having had full opportunity to challenge the legitimacy of the bank debts in question.

## II.

■ Marian concedes, as she must under the authority of *Claunch v. Claunch,* 525 S.W.2d 788 (Mo.App.1975), that a court in dissolution of a marriage may order that one spouse receiving property not divisible in kind to pay an equalizing sum of money to the other spouse. However, she attempts to distinguish that situation from the present one by saying that the court has no authority to order one of the spouses to make payments to a stranger who is not a party to the dissolution proceedings. She cites no authority for that purported distinction, and on principle the attempted distinction has no appeal. The only reason given by Marian for not allowing such an order is that it would give rights of enforcement to a stranger; but even if this were so, no basis for a valid objection can be perceived.

■ In truth, however, the third parties (the banks) will have no right to enforce the court order. The judgment of May 12, 1975, contains nothing expressly or by implication showing any intention to give rights thereunder to either of the banks. The only right of enforcement rests with Isadore. 50 C.J.S. Judgments § 857, p. 431; 46 Am.Jur.2d Judgments Sec. 903, p. 1035. See also *Nola v. Merollis Chevrolet Kansas City, Inc.,* 537 S.W.2d 627, l. c. 633 (Mo.App. 1976).

## III.

Although in her Point Relied Upon Marian cites the constitutional due process clauses as well as the constitutional prohibition against imprisonment for debt, her argument limits itself solely to the latter provision. In that respect, she relies almost entirely upon the decision in *Ex parte Fowler,* 310 Mo. 339, 275 S.W. 529 (banc 1925). That opinion contains language to the effect that a probate court order upon an executor to pay money to an administrator pendente lite cannot be enforced by con-

tempt. *Fowler* has subsequently been explained on the basis that the order there sought to be enforced was void for failure of the probate court to comply with constitutionally required procedures. *Fuller v. Smedley,* 48 S.W.2d 131 (Mo.App.1932).

■ In any event, all prior law in Missouri (at least as respects enforcement of matrimonial decrees) has been preempted by the recent decisions of the Missouri Supreme Court En Banc in *State ex rel. Stanhope v. Pratt,* 533 S.W.2d 567 (Mo. banc 1976), *Teafey v. Teafey,* 533 S.W.2d 563 (Mo. banc 1976) and *State ex rel. McCurley v. Hanna,* 535 S.W.2d 107 (Mo. banc 1976). *Stanhope* expressly overruled a long line of previous rulings headed by *Coughlin v. Ehlert,* 39 Mo. 285 (1866), which had held alimony to be "simply an order for the payment of money" and therefore within the scope of Article I, Sec. 11 of the Missouri Constitution. *Stanhope* and its companion cases make clear that Missouri has joined the unanimous authority elsewhere in holding that alimony and child support judgments have a special status and may be enforced by contempt proceedings despite constitutional prohibition against imprisonment for debt.

The recent decisions of the Missouri Supreme Court do not, however, reach the question as to whether orders for payment of money as part of property settlement between the spouses are also enforceable by contempt proceedings. On this subject there is a sharp division of opinion among the courts of this country. 24 Am.Jur.2d Divorce and Separation Sec. 944, p. 1078; 27B C.J.S. Divorce § 300(3), p. 380; Fowler and Krauskopf, "Property Provisions," 29 Journal of Missouri Bar 508, l. c. 515 (1973); Clark, "Law of Domestic Relations," p. 467; Dobbs, "Contempt of Court: A Survey," 56 Cornell Law Rev. 183 (1971); 41 Texas Law.Rev. 141 (1962).

■ Under the facts of this case, it is unnecessary to voice any opinion on that question. Likewise, it is inappropriate in this case to express any opinion on the view held by the trial court that the prohibition

against imprisonment for debt would not be violated inasmuch as he announced that any punishment which he might ultimately impose would be limited to that of a fine. The reason why those issues can be passed in this case is that the order of the trial court now in question was premised upon the placing of Marian upon probation. Because probation is not permissible in this proceeding, the whole solution devised by the trial court is improper and cannot stand.

■ The contempt order issued here viewed as a whole was clearly intended to be remedial and coercive in nature. Therefore, under *Teefey v. Teefey, supra,* the proceeding is one of civil contempt rather than for criminal contempt. Probation cannot be used in cases of civil contempt, inasmuch as "[p]robation and civil contempt are conceptually incompatible." *In re Marriage of Vanet,* 544 S.W.2d 236, 1. c. 247 (Mo.App. 1976). The theory of the trial court for permitting Isadore to withhold the maintenance payments for seven months was that this was a condition to the probation granted Marian. Because the placing of Marian on probation was itself improper, the peg disappears upon which the trial court attempted to hang the permission for the withholding of the seven maintenance installments.

Nevertheless, the circumstances of this case cry loudly for relief to Isadore and for vindication of the court's authority. These objectives can be served through the agency of Sec. 452.365 which provides:

"If a party fails to comply with a provision of, a decree or temporary order or injunction, the obligation of the other party to make payments for support or maintenance or to permit visitation is not suspended, but he may move the court to grant an appropriate order."

The purpose of this new section is explained in the commentary in the Commissioners' Note to Sec. 315 of the Uniform Marriage and Divorce Act, 9 Uniform Laws Annotated, p. 500, wherein it is stated: "This section is intended to abolish self-help remedies, now all too common in family litigation, whereby one party withholds support or maintenance payments to force the other party to comply with visitation orders and vice-versa. Disputes of this kind should be settled by the court * * *." The present situation demonstrates the reason for the new rule. When Marian refused to pay the bank installments, Isadore was first tempted and indeed succumbed to the temptation of resorting to self-help by withholding maintenance payments. That resort to self-help by him was unwarranted and soon was remedied by Marian's use of garnishment process. Still, Isadore was entitled to some relief, and that was available to him under Sec. 452.365.

■ Although his proceeding in October, 1975, was denominated as one in contempt, full evidence was heard bearing on the whole situation just as if Isadore had moved for "an appropriate order" specifically designating Sec. 452.365. Judge Randall did hear evidence on the then current situation of the parties, he was satisfied by the evidence that Marian was in fact failing to comply with the order of May 12, 1975, that she had no just excuse for that failure, and that she had the means with which to comply. An order that Isadore be permitted to withhold maintenance payments was therefore fully justified. The order actually entered, although unduly complicated by attempting to use contempt concepts, was in effect a proper order under Sec. 452.365. The judgment of the trial court which reaches a correct result, even though for an incorrect reason, should be affirmed. *Advance Concrete and Asphalt Co. and Turnpaco, Inc. v. Ingels et al.,* 556 S.W.2d 955 (Mo.App.1977). See also Rule 84.14.

*Taylor v. Taylor,* 548 S.W.2d 866 (Mo. App.1977) tends to support (or at the very least does not oppose) the use of Sec. 452.-365 in the present situation. That case involved a child custody order which provided that the mother should pay transportation costs for visitation trips and that if she failed to make such payments in advance then the father might deduct such costs from the support payments. The court on appeal disapproved that provision, saying

that under Sec. 452.365 the party seeking relief should file a motion for an appropriate order "such as" an order to show cause why the offender should not be held in contempt.

*Taylor* should be read as meaning only that a provision for deduction should not be made in advance of any default. If and when a default occurs, the party seeking relief can then file a motion and give the court an opportunity to review the entire situation at that time. That is exactly what has been done in this case, thereby complying with the intention expressed by the *Taylor* opinion.

■ Furthermore, the same result can be reached on grounds independent of Sec. 452.365. Marian's obstinate disobedience of the court's order constituted a change of conditions which under conventional principles warranted a modification of the maintenance provision. *R.L.S. v. J.E.S.*, 522 S.W.2d 5 (Mo.App.1975).

■ Marian argues that if relief cannot be given by way of contempt, then no relief can be afforded on any other theory, for the reason that Isadore has chosen and has pursued the particular contempt procedure. That result does not follow. Regardless of the form in which the proceeding was originally cast, the hearing before Judge Randall was far ranging and encompassed all the problems and circumstances in which these two former spouses found themselves. Both parties have treated this proceeding as a vehicle to obtain a determination of their respective rights, and no good reason exists why that determination should be further delayed. See *Davis v. Broughton*, 382 S.W.2d 219 (Mo.App.1964).

■ Marian also argues that no relief can be granted by way of permitting Isadore to withhold maintenance payments because Judge Murphy refused such permission on August 5, 1975, and his ruling is now res judicata. Judge Murphy's ruling does have res judicata effect, but only as to the facts then existing. 24 Am.Jur.2d Divorce and Separation Sec. 676, p. 795; *Ward v. Ward*, 534 S.W.2d 593 (Mo.App.1976). At the time of Judge Murphy's ruling on August 5, 1975, it appeared that Marian had been refusing to pay the banks because of a good faith belief on her part that the indebtedness due those banks did not truly relate to the carpeting and air conditioning. When Judge Murphy determined that issue against her, he could very well have believed that she would then submit and commence obedience to the order of the court without further coercion. As Judge Randall aptly stated at the hearing in November, 1975: "It's very possible that at that time Judge Murphy assumed your client was going to follow his orders. When we had the hearing, it was proved that she refused to follow them, so that makes a lot of difference." By November, 1975, the situation before Judge Randall was substantially different than it had been before Judge Murphy the preceding August. It was obvious that Marian would not comply with the order of May 12, 1975, in the absence of some further action by the court. Her recalcitrant disobedience was a sufficient change of circumstance to prevent the previous order of August 5 from being res judicata. *R.L.S. v. J.E.S., supra.*

## IV.

Marian contends that the evidence established that her conduct was not willful, contemptuous or contumacious. In light of the conclusion under Section III of this opinion that the order of the trial court will not be enforced as one of contempt, it becomes unnecessary to review the evidence and findings in the light of requirements which apply in contempt proceedings.

■ Of course, even under procedure appropriate to Sec. 452.365, the court should consider the ability of Marian to pay the bank indebtedness and the family circumstances which will result from her compliance with the order that she do so. Here there was a full exploration of all the pertinent facts and circumstances. In May, 1975, when Judge Murphy originally ordered Marian to pay the bank installments, she was earning $50 to $55 a week in addition to the $500 monthly child support and

$200 monthly maintenance which was ordered in her behalf. The order of May 12, 1975, reflects Judge Murphy's determination that those sums provided sufficient income to permit payment by Marian of the bank installments. By November (the date of the hearing before Judge Randall), Marian's earnings had increased to approximately $80 per week. If her financial situation in May was adequate to justify requiring her to meet the bank installments, there is no reason to say that her ability was less so in November.

The trial court found that Marian "having the ability to do so" willfully refused to comply with the order of May 12, 1975. That finding must be affirmed. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

### V.

■ For her final point, Marian argues that she is financially unable to bear the expenses of this litigation and that she should have been allowed those expenses including an attorney's fee to be paid by Isadore. The evidence shows that Marian has income of over $1,000 a month and that has not been made to appear clearly inadequate for her to bear her own costs in this litigation.

■ In any event, her financial ability is only one factor to be considered. *In re Marriage of Vanet, supra.* Section 452.355 provides that the court may order payment by one party of the litigation expenses of the other "after considering all relevant factors." One very relevant factor here is the obstinate refusal of Marian to obey the court order of May 12, 1975, and her insistence upon relitigating the legitimacy of the bank debts even after the determination of that question by Judge Murphy on August 5, 1975. Marian certainly should not be rewarded for that defiant conduct. To the contrary, her conduct fully justifies the denial of any allowance of litigation costs. 27A C.J.S. Divorce § 222g., p. 976; *Reibstein v. Reibstein,* 220 Ark. 783, 249 S.W.2d 847 (1952); *Kirkwood v. Kirkwood,* 83 Idaho 444, 363 P.2d 1016, 1019 (1961). In the case last cited, the court pertinently held:

"In denying the motion the court correctly found that plaintiff had persistently evaded and obstructed the court's order with reference to visitation. Her continued willful disobedience of the decree occasioned the repeated applications by defendant for the help of the court in securing his right of visitation. Under such circumstances she was not entitled to an order having the effect of requiring the defendant to finance her defense in litigation resulting solely from her contemptuous conduct."

Those portions of the order of November 18, 1975, finding Marian guilty of contempt, suspending imposition of sentence and placing her on probation are set aside. As so modified, the judgments of the court below are affirmed.

All concur.