**Mary Kay RONZIO, Appellant,**

*v.*

**Martin RONZIO, Respondent.**

**No. 47850.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 26, 1984.

---

Irving L. Cooper, Clayton, for appellant.

Jerome T. Bollato, Clayton, for respondent.

CRANDALL, Judge.

Appellant and respondent (ex-spouses, and hereafter mother and father, respectively) executed a "Consent Modification of Decree of Dissolution" in contemplation of the mother's prospective remarriage and resettlement in Atlanta, Georgia, with the parties' two minor children. Among the proposed modifications was that which granted the father (who resides in Missouri) temporary custody of both children one weekend each month from September through May. The father agreed to pay one-half of the children's round trip air fare for making the monthly weekend visits. The parties could not agree on who would pay the other half and tendered that issue to the trial court with the proposed decree modifications.

The trial court approved the proposed modifications and ordered the mother to pay the disputed one-half of the children's air fares. The latter order is the only one challenged on appeal. We affirm.

■■■ The mother argues that the father should have been ordered to pay all of the children's transportation expenses, citing the parties' disparate income and resources. While we agree that the financial circumstances of the parties is an important consideration in apportioning the expense of exercising child custody rights, *see e.g. In Re Marriage of Hays*, 594 S.W.2d 369, 371 (Mo.App.1980), an order apportioning the expense need not mirror the parties' relative financial status. The trial court has broad discretion in making the apportionment, and the terms of the resulting order are reviewed only for a manifest abuse of that discretion. *Taylor v. Taylor*, 548 S.W.2d 866, 869 (Mo.App. 1977).

■■■ Though the mother had been unemployed for several years at the time of this hearing, she and the children were residing permanently in an Atlanta suburb with the mother's intended husband, who was

spending a good part of his $1,800 net income each month on the mother's and children's support. Within the year prior to the hearing, the mother had realized $36,000 on the sale of her St. Louis residence, $25,000 of which she reinvested in the Atlanta residence. She continues to receive $800 each month from the father for child support. Moreover, in response to questions from her own attorney at the hearing in this cause, the mother said twice that "[she] will be able to handle any portion of the transportation costs that the Court may order [her] to pay." Under the circumstances, the trial court's order that she pay an estimated $300 per month in air fares is not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration," *Anderson v. Robertson*, 402 S.W.2d 589, 593 (Mo.App. 1966), and therefore was not an abuse of discretion.

Mother also contends the order was intended to punish her for moving to Atlanta with the children. The contention is not supported on a fair reading of the record. Rather, the record reflects the conscientious effort of the trial court to arrive at an equitable apportionment of the travel expenses.

The order is affirmed.

REINHARD, J., concurs.

KAROHL, P.J., dissents in separate opinion.

KAROHL, Presiding Judge, dissenting.

I respectfully dissent.

The original decree granting custody of the two children to appellant-mother was granted September 28, 1982. At that time the eldest was ten and the youngest five years of age. They are now twelve and seven. By the decree respondent-father had temporary custody on alternate weekends, alternate legal holidays and two weeks in the summer.

Anticipating a remarriage appellant moved to Georgia with the children and agreed to respondent's demands for temporary custody. By consent respondent is to have temporary custody one weekend per month (September through May), Christmas to New Year's Day, alternate Thanksgiving holidays, each Easter holiday, June 15 to July 15, and August 1 to August 14 of each year. Child support is to be reduced by one-half during the June 15 to July 15 period. If fully exercised the children will travel from Atlanta, Georgia to St. Louis fourteen times one year and thirteen times the next year.

The order here appealed requires appellant to pay one-half of six trips and one-half of the Thanksgiving, Christmas and Easter trips only if the children do not travel twice in those months. The election was left solely to the respondent. Appellant will therefore be required to pay transportation costs for both children no less than six and as many as nine times per year.

The parties agreed to the numerous trips. The court expressed reservations as to the wisdom of the plan but deferred to the parties' agreement. I sympathize with the resulting imposition on the children of tender years and believe the plan is faulty. *Taylor v. Taylor*, 548 S.W.2d 866, 868 (Mo. App.1977). It is clear that respondent dictated the terms of this "agreement" as a condition for permitting appellant to move to Georgia. He is "[t]he chief beneficiary of the frequent shifts of the children back and forth." *Id.* at 869.

I view the order to be an abuse of discretion for several related reasons. First, there is no evidence to support a finding that appellant can pay one-half of the transportation costs. Second, the order is punitive against the appellant who is moving for a legitimate reason, remarriage. This basis was properly rejected in *Taylor*. Id. at 869.

The failure of proof is remarkable. Appellant was unemployed, had not worked for wages during the marriage, 1971 to 1982, and by respondent's testimony she was not skilled at anything. Her testimony about her ability to share the transportation expenses was as follows:

Q. Now, Mary Kay, if the court later should decide that you have to pay the other half of those disputed transportation costs, you understand that then you and Marty will be splitting, dividing those transportation costs, do you understand that?

A. Yes.

Q. And you think you'll be able to handle that *on the money that you're getting in the way of child support;* is that right? Yes or no.

A. I don't know.

*        *        *        *        *        *

Q. So *coupled with the child support* Marty Ronzio is going to pay you *and the fact that you're going to get married* and your present fiancé is netting about Eighteen Hundred Dollars ($1800) per month, do you, therefore feel you'll be able to handle any portion of the transportation costs that the court may order you to pay?

A. Yes.

Q. Now, I'm not saying that you're agreeing to pay it; but if that ruling would come that way, you think you can handle it now; is that right?

A. Yes. (our emphasis).

The cost of such transportation was not established before or after this inquiry. The opinion was based upon the use of the children's child support for a purpose other than support and a *future* husband's earnings, which may not have been available for that purpose. The $7,000 remaining from the wife's share of marital property will not support the order. It is doubtful on the facts of this case that it should support the order even if the transportation costs were known. At most this would support less than three years' transportation. Once spent there will be no presently discernable available funds to comply with the order and the parties and the court will be faced with a further burden. There is no precedent to justify requiring appellant to expend her share of marital property to secure permission to remarry and move with her children to another state.

Absent evidence of the cost of transportation and appellant's ability to pay that cost from an acceptable source the order appears to be punitive. That basis was expressly forbidden by this court in *Taylor* where we said at page 869, ".. we agree with her that custody rights and transportation costs should not be used as a vehicle for punishing one parent or rewarding the other." (citations omitted). *In re the Marriage of Hays,* 594 S.W.2d 369, 371 (Mo. App.1980).

Moreover the trial judge made the following observation:

I assume that you both have your youngsters' interest at heart and you're not playing pingpong. My only decision in this case, other than what's for the best interest of the children—and frankly *I'll let you both know that when anybody leaves the jurisdiction of this court,* it's generally my idea that if you take the children out of the jurisdiction of the court, then *you normally have to pay the piper.*

That's generally my ruling. So that if you were to take the children to Atlanta, my thinking would normally be, Mrs. Ronzio, that you would pay to bring them back because I feel that when you do that, you deprive the noncustodial parent of a tremendous opportunity to be with his or her children, in this case your former husband's opportunity to exercise temporary custody rights. (our emphasis).

The record is clear that respondent was earning $77,000 per year in salary and may be entitled to additional sums as a bonus. There was no evidence whatever that respondent was unable to bear the transportation expenses without the least inconvenience or hardship. As the only party with income the equitable solution between the parties was to place the expenses of transportation on the respondent. The result may be otherwise only if there is evidence to support a finding that appellant had sufficient income to pay a share of the expenses or if her move was merely a matter of choice unrelated to work reloca-

tion at the request of an employer, remarriage, or a similar justification. There is no question in this case that the move had as its purpose an attempt to avoid temporary custody or to inconvenience respondent.

I would reverse and remand because the evidence failed to prove the extent of the transportation expense which appellant has been ordered to pay; there is no proof, let alone substantial evidence, to support a finding of appellant's ability to pay a share of the transportation costs; no evidence that the move was intended to limit respondent's temporary custody; and, no evidence that respondent was financially unable to pay the increased expenses which would result in fully exercising his rights of temporary custody as modified. The judgment is against the weight of the evidence, is punitive and therefore erroneously declares and applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).