Melvin VAN PELT, Petitioner–
Respondent,

v.

Regina VAN PELT, Respondent–
Appellant.

No. WD 44653.

Missouri Court of Appeals,
Western District.

Jan. 28, 1992.

Janet Wake Larison, Grant City, for respondent-appellant.

Larry L. Zahnd, Maryville, for petitioner-respondent.

Before LOWENSTEIN, C.J., and FENNER and ULRICH, JJ.

LOWENSTEIN, Chief Judge.

Respondent Melvin Van Pelt filed a dissolution action in which his wife Regina Van Pelt was denied custody and visitation of the three minor children. Regina appeals, arguing that the trial court incorrectly denied her reasonable visitation rights, because such a ruling is against Missouri public policy, no finding of physical endangerment or impairment of emotional development was made under § 452.400.1, RSMo Cum.Supp.1990,[1] there was no evidence of endangerment to the physical health or impairment of the emotional development of the children, and finally, because the court did not appoint a guardian ad litem under § 452.423.1.

The parties were married in 1975, and in May of 1987, Melvin left the marital home with the children, filed for divorce, and sought sole custody of the minor children. A month later, Melvin and the children returned to the marital home and the couple resumed their marital relationship until August of 1989, when Regina left the home without the children. The majority of the testimony at trial relates to outside observation of the children and their relationship with and treatment by their mother and father, from the early 1980's until trial. Although the standard of review is that of a court tried case under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and as such the ruling is upheld if there is sufficient evidence to support it, the facts important to the points will be discussed below in great detail, given Regina Van Pelt's important interest in seeing her children.

### Denial of Visitation

Regina argues that the trial court's denial of visitation was an abuse of discretion in that the ruling is against the public policy of Missouri; that the court made no finding of endangerment of physical health or impairment of emotional development as required by 452.400.1 when denying visitation; and that there was no evidence to support such a finding.

It is the policy of the state that there be frequent and meaningful contact between parents and children following a dissolution:

> ... to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage ... court shall determine the custody arrangement which will best assure ... such frequent and meaningful contact between the child and each parent, as is indicated in the best interests of the child under all relevant circumstances. § 452.375.3.

However, another provision sets forth an exception to that policy:

> A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development. § 452.400.1.

The present case deals with the statutory exception, which is an expression of the state's policy, and so Regina's point is denied.

Regina's second point is that the trial court made no "finding" as required by § 452.400.1. As quoted above, this section also requires a hearing, and it is uncontested that such a hearing, for the express purpose of determining custody and visitation, did take place in this case, and that a great deal of testimony came out as to the relationship between the children and Regina. As to "findings," the court in *Fetters v. Highley*, 714 S.W.2d 210, 211 (Mo.App.1986), reversed a trial court's denial of visitation, stating that no express finding under § 452.400.1 had been made, and that insufficient evidence of endangerment of physical health or impairment of

---

1. All references to the child custody provisions are made to RSMo Cum.Supp.1990.

emotional development existed in the record. On the other hand, the court in *Flaton v. Flaton,* 777 S.W.2d 948, 951 (Mo. App.1989), recognized that a finding of emotional impairment pursuant to § 452.-400.2 was "implicit in the issuance of the order" reducing the father's visitation privileges. The *Flaton* court granted the mother permission to move out of the state with the children, and the evidence of emotional impairment was that the previous amount of visitation would unduly disrupt the children's normal living routine, *id.* The case of *Jensen v. Borton,* 734 S.W.2d 580, 584 (Mo.App.1987), also applies, in that when a trial court makes no findings of fact, this court must assume that all fact issues were found in accordance with the result.

■ In the case at bar, the trial court's order reads "[t]he court finds it is in the best interests of the minor children ... that [Regina] shall not have any visitation," and "[i]t is further ORDERED and DECREED that, for good cause shown ... [Regina] shall have no visitation with said minor children at this time." Under the evidence in the record, this court holds a finding of impairment of emotional development is implicit from the trial court's order denying visitation "in the best interests of the minor children" and for "good cause shown." At best, the dereliction of the trial court in not using the words "impair the emotional development" in its order would require sending this case back to the trial court to insert those words into the order. On review, an appellate court may render the judgment that should have been rendered by the trial court, *Pemberton v. Pemberton,* 779 S.W.2d 8 (Mo.App.1989), in order to dispense with the remand process. This power is particularly appropriate here, where the trial court made a correct ruling which lacked the formal statutory requirements, and a remand to re-write the order would be an empty act. The point on appeal is denied. This ruling should not be taken as a sign of overlooking a remand in future cases for noncompliance with the statute. Further, this ruling is explicitly based on *Flaton, Jensen,* and *Pemberton,* as well as on the overwhelming evidence of

impairment of emotional development in the record.

■ As to Regina's final point concerning visitation, this court finds sufficient evidence under the standard of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), for the trial court to deny visitation on the basis of impairment of emotional development, § 452.400.1. The entire record shows the relationship between the children and Regina as strained at best, and that her interest in visiting her children is outweighed by their interest in a normal, happy childhood. The evidence at trial is arranged below in two parts, that pertaining to the difference in the children's homelife since their mother, Regina, left, and that pertaining to the children's reactions to the scheduled visits that occurred before trial.

Current homelife. Jody Starr of the Division of Family Services ("DFS") testified that she had been approached by Melvin in June, 1990. The son, Jerry, had been exhibiting violent behavior in school and at home, and Melvin had felt the need of assistance in dealing effectively with Jerry and with the children's reactions to Regina's absence. Melvin had also felt some insecurity in his own ability as a single parent. Ms. Starr testified to the love and care now existing in the home, and the good relationship between the children and their father. She also testified that Jerry's anger toward his father had disappeared.

Linda Meadows, a counselor on contract with DFS, met with Melvin and the children from July of 1990, until January of 1991, again at Melvin's request and with his full cooperation. In the beginning, Ms. Meadows helped Melvin become more confident in dealing with Jerry's anger, and throughout the course of the counseling much progress was made in communication among the family and in terms of Melvin's confidence as a father. Ms. Meadows testified that under Melvin's supervision, the home had great stability, was clean, well organized, and the family exhibited loving and caring behavior.

Robert Knapp, who lived across the street from the family, testified that Regina had not supervised the children nor kept them clean, she had yelled and cursed at them, and that they had been nervous and shy. Mr. Knapp stated that the children were "altogether different" under their father's care, and were talkative and friendly, living a "child's life" rather than a "life of hell."

Dorla Taylor, who had previously worked as a DFS Parent Aid with the family as early as 1983, testified to the remarkable change in the children and the home without Regina. Ms. Taylor has had at least one of the children in her Sunday School class since that time, and had become a family friend. She stated that Regina's parenting made the children extremely withdrawn, like "little scared animals." Ms. Taylor testified that Regina's behavior was unstable and flighty, that she would get "upset over the least little thing," and would "start screaming." Ms. Taylor testified to the filthiness of the house and the children under Regina's care for a six year period, and to Melvin's worry and inability to change the situation. Ms. Taylor said the change in the home and children since Melvin took over is "marvelous," that the children have "blossomed and bloomed," and they talk, laugh, and act like normal children. Furthermore, the children, for the first time, are "part of the group" in Sunday School and 4-H. The major change, in Ms. Taylor's opinion, occurred because Melvin has learned to discipline the children with love.

The supervised visits. Melvin testified that Regina called only once requesting visitation with the children from the time she left home in August of 1989, until visitation was arranged by the attorneys in the case in December, 1990. There was some evidence that during this one year, four month period, Regina saw the children once in the church parking lot, and on one of their birthdays. In December, 1990, supervised visitation was arranged by the attorneys involved, and four visits occurred before the March, 1991, trial date. All four visits were supervised by Jody Starr. Ms. Starr testified that the visits went well, but

were discontinued because four or five cousins had attended the last visit, and the children had "gotten out of hand." However, Ms. Meadows, the counselor, testified to the children's nervousness and fear of the first visit. Following the first visit, Heather, seven at the time, began telling Ms. Meadows about events from when Regina was living with them. The older girl and Jerry talked of their hurt and anger over the past, and their fearfulness and nervousness over seeing Regina. Ms. Taylor also testified to the adverse effect on the children of visits with their mother. She said they had an aggressive attitude when she saw them at Sunday School, and had returned to the silent, withdrawn behavior exhibited when they had lived with their mother.

The younger girls, eleven and eight, were interviewed by the judge and attorneys in chambers, while Jerry, fourteen, was sworn in and testified in chambers. All three said they did not want visitation with their mother. The youngest girl could not say why, while the elder said she did not want to see her mother until her mother was "better" and did not "hit on us." The child could not say why she thought her mother was sick in any way. Jerry testified that his mother was not nice to them when she had been at home, that she would not bring presents she had promised, and that her visits upset all three children.

The above facts are those most favorable to the trial court's ruling, and provide sufficient evidence for the trial court's denial of visitation in this case. Still, this court would further note that the only evidence brought forward by Regina in her favor was 1) the four supervised visits with the children "went fine," 2) testimony by her stepmother that Melvin had been abusive to Regina six years earlier and that after the separation Regina had "bloomed" and "grown up as a person," and, 3) Regina's own testimony that she loved her children and wanted to see them. In light of the children's wishes and the great weight of evidence as to the happiness in their home without visitation with their mother, Regina's evidence does not support a reversal

of the trial court's decision, and the point is denied.

*Appointment of a Guardian ad litem*

■ Regina's final point on appeal is that a guardian ad litem should have been appointed because evidence of abuse and neglect surfaced during the dissolution proceeding. This court first notes that a trial judge's mandatory duty to appoint a guardian ad litem per § 452.423.1, arises when abuse is alleged in the motions or pleadings, or when evidence of abuse or neglect surfaces in the proceeding itself. This was appreciated in *King v. King*, 793 S.W.2d 200, 203–04 (Mo.App.1990), where neither the motions, the record, nor evidence before the court supported a finding of abuse or neglect, and the mandatory duty of the trial judge was not triggered.

■ The case at bar is unusual, in that the evidence of abuse or neglect points toward Regina as the abuser, yet she is arguing for appointment of a guardian ad litem with the apparent motivation that such an appointment would be favorable to *her* interests. This court holds that a parent may not protest the non-appointment of a guardian under § 452.423.1 on the basis that the parent's interests were harmed, when no harm to the child is shown. Thus, if Regina had abused or neglected the children, then the trial court's actual ruling would presumably have been recommended by the guardian, and so Regina cannot be adversely affected by non-appointment. And, if Regina was not an abusive parent, then her responsibility as the alleged abuser is to request a guardian at trial, rather than wait for an adverse ruling and then sandbag the proceeding. This is because the duty of the guardian is to look out for the best interests of the child, not the parent. As long as the result reached by the trial court is supported by the evidence as being in the best interests of the child, the paramount concern of Missouri's child custody provisions, § 452.375.3, RSMo Cum. Supp.1990, the alleged abuser has no complaint for non-appointment. Regina's final point on appeal is denied, and the judgment affirmed.