Theda Annette REDING (now Mowry), Plaintiff,

and

Gary Jones and Paula Jones, Intervenors–Appellants,

v.

Steve REDING, Defendant–Respondent.

Theda Annette REDING (now Mowry), Plaintiff–Appellant,

v.

Steve REDING, Defendant–Respondent.

Nos. 17443, 17575.

Missouri Court of Appeals, Southern District, Division Two.

July 1, 1992.

Rehearing Denied July 20, 1992.

Application to Transfer Denied Sept. 22, 1992.

**38**

William J. Fleischaker, Roberts, Fleischaker & Williams, Joplin, for appellants.

No appearance for respondent.

MONTGOMERY, Judge.

These consolidated appeals arise from two different orders entered in a proceeding to modify custody and visitation orders. Intervenors in the case are Gary Jones and Paula Jones (grandparents) who appeal from a *pendente lite* order requiring them to pay $5,000 to the attorney of Steve Reding (Steve) and $750 to the guardian ad litem. Theda Annette Reding Mowry (Theda) appeals from an order modifying the Decree of Dissolution of Marriage which now provides her visitation rights for two six-hour supervised visits monthly in Omaha, Nebraska, and requiring her to prepay costs of supervision as a condition to such visits. Neither Steve nor the guardian ad litem filed briefs in this Court.

During this protracted and bitter litigation, the animosity of the parties and the maternal grandparents is reflected throughout the record. Unfortunately, the controversy centers on Chrystal Dawn Reding, born February 21, 1983, during the marriage of Steve and Theda. On July 17, 1986, Chrystal's parents were granted a Decree of Dissolution of Marriage, and her custody was awarded to Steve. Theda was given certain specific visitation rights.

The tranquility (if any ever existed) between Steve and Theda lasted approximately three weeks. On August 7, 1986, Theda filed a motion to modify custody provisions of the decree alleging numerous problems with the custody and visitation arrangements. That motion was amended on June 2, 1987.

On September 12, 1988, Steve filed a counter-motion to modify requesting Theda's visitation rights be terminated. He alleged, in part, that (a) on or about July 12, 1987, Theda, after exercising weekend visitation, failed to return the minor child to him. From July 12, 1987, through August 27, 1988, Theda abducted and concealed the minor child from him, assumed false names for herself and the minor child, removed the minor child from Missouri to Albuquerque, New Mexico, and failed and refused to return the child to him, (b) Theda is emotionally unstable and has made frequent threats that she would cause harm to Steve if he was ever able to regain custody of the minor child, (c) for over thirteen months Theda prevented the minor child from communicating with her father and because of the child's concealment, Steve was unable to communicate with the minor child, (d) Theda failed and refused to provide adequate medical care for the minor child during the thirteen-month period of concealment, and such actions endangered the physical health and impaired the minor child's emotional development.

By April 20, 1990, the grandparents had been allowed to intervene in the motion to modify proceedings. They sought to estab-

lish grandparent visitation rights pursuant to § 452.402.1(1), RSMo Supp.1991.[1] Later, Steve filed a motion *pendente lite* requesting attorney fees, suit monies and court costs against both the grandparents and Theda. This motion was heard November 9, 1990, where extensive evidence concerning the financial condition of the parties was presented. Steve testified of substantial attorney fees incurred during the litigation. However, nowhere does the record reflect what portion, if any, of his attorney fees are attributable to defending the grandparents' visitation motion. Neither does the record reveal any evidence that the guardian ad litem incurred any time or expense in regard to the grandparents' motion. At the conclusion of the hearing the trial court ordered the grandparents to pay $5,000 attorney fees *pendente lite* to Steve's attorney and $750 as guardian ad litem fees *pendente lite*.

Subsequently, the grandparents filed a motion for "court-ordered visitation" which was apparently treated as a request for temporary visitation. In response to this motion the court entered an order which granted a 30–minute visit with the minor child to the grandparents either on December 19, 1990, or December 20, 1990.

Unexplainably, the grandparents filed a voluntary dismissal of their action under Rule 67.01 on January 15, 1991. Trial of the remaining issues took place on April 10, 1991.

At trial, Steve appeared with his attorney and only Theda's attorney appeared. Her absence is unexplained. Theda's attorney announced he was dismissing his client's motion to modify as amended on June 2, 1987, and was prepared to defend the remaining matter, i.e., Steve's counter-motion to modify filed September 12, 1988. Steve proceeded with the presentation of evidence on his motion which consisted of deposition testimony, admissions of Theda and medical reports. During the course of the proceedings both attorneys indicated the parties had agreed on certain restricted visitation rights in favor of Theda. That stipulation and agreement (Exhibit V) was embodied in a four-page document signed by Steve and his attorney but unsigned by Theda. Her attorney announced in open court he was signing Exhibit V which "pertains to visitation rights in favor of my client."

The evidence in the record reveals the following: Theda's testimony in her deposition of October 25, 1989, admits she removed Chrystal from the State of Missouri in 1987 and both were absent approximately thirteen months, during which time she refused to permit any communications between Steve and the minor child. She acknowledged that during a brief period of her absence she delayed obtaining medical treatment for Chrystal because she was afraid of discovery. She indicated she was arrested and the child returned to Steve in August of 1988. Theda related she entered a plea of guilty to a felony charge of "Interference with Custody" (presumably in violation of § 565.150, RSMo 1986) arising from her New Mexico jaunt with Chrystal. She received a suspended imposition of sentence and was placed on probation. Theda's admissions were introduced whereby she acknowledged removal of the child from Missouri to New Mexico and that she hid Chrystal out for approximately thirteen months. She admitted taking steps to avoid detection by changing her identity and that of the child by adopting assumed names and by obtaining false identification. She stated she told people her ex-husband was in the Mafia and he would kill her and the child if he found their whereabouts.

The deposition testimony of Charles Wallander was admitted into evidence. Wallander stated he had dated Theda from January through November of 1989, and during that time she told him if she did not regain custody of Chrystal, she would run off with her again. The witness indicated he had previously been convicted of felony child abuse. He indicated he had previously believed he was possessed by demons.

Medical reports from Lutheran Medical Center in Omaha, Nebraska, concerning treatment and evaluation of Chrystal from

**1.** Statutory references are to RSMo Supp.1991, unless otherwise indicated.

February 11, 1991, through March 1, 1991, along with the deposition testimony of Dr. John F. Riedler were admitted into evidence. According to Dr. Riedler, Chrystal had been extremely traumatized due to the disputes between her parents, and she needed a normal environment in order to assure future stability. Dr. Riedler indicated it would not be in the child's best interest to travel from Omaha to Joplin for brief periods of visitation. He felt that once school was out the child should be "eased into" visitation with her mother. He recommended, for the time being, that the visitation take place in some form of a monitored facility.

Finally, Theda's attorney called Steve to the stand, and he testified only of his residence in Omaha, Nebraska, and of his approval of the stipulation regarding Theda's visitation rights.

On April 24, 1991, the court entered its order of modification in which it found (1) jurisdiction over the child, (2) that there had been a change of circumstances so that modification of the visitation provisions of the original decree were necessary to serve the best interests of the child and finding after consideration of all factors set forth in § 452.400, RSMo, that unsupervised visitation by Theda with the minor child would be inappropriate, (3) that the parties had presented a stipulation to the court making certain recommendations, and the court found the stipulation was not unconscionable. The court then enacted visitation provisions identical to those set out in the stipulation and referred to in the first paragraph of this opinion. In addition, the court entered judgment in favor of Steve and against Theda in the amount of $7,000 for attorney fees and awarded the guardian ad litem attorney fees of $2,000 assessed equally against the parties.

Theda [2] filed a *pro se* document on May 9, 1991, called "Motions of Petitioner." The motion alleged, in pertinent part, her attorney had told her that a mutual dismissal by all parties had been agreed upon, and her attorney advised her that Steve's attorney did not follow through with his agreement. She alleges she was advised by her attorney not to appear at trial and that she did not give her attorney authority to enter into any stipulation or agreement. She further alleged the decree was not in the best interest of the minor child and that the decree was dependent upon the stipulation being bona fide, which it was not. Her prayer requested "that the Court void said Decree Modifying Decree of Dissolution of Marriage and set aside said Stipulation and Agreement on the basis that Petitioner's attorney ... did not have authority for same." This motion was overruled by the court without a hearing.

*GRANDPARENTS' APPEAL, No. 17443*

The grandparents' only point asserts, among the three subparts, the *pendente lite* orders entered against them were unsupported by any evidence to show what portion, if any, of Steve's attorney fees were attributable to the grandparents' action.

The grandparents' action was brought under § 452.402, which provides, in part:

1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when:

(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when such rights have been denied to them;

. . . .

3. If the court finds it to be in the best interests of the child, the court may appoint a guardian ad litem for the child. . . . The court shall allow a reasonable fee to the guardian ad litem to be taxed as costs in the proceedings.

---

**2.** The legal file reflects Theda is now represented by her fourth lawyer in this case since July 17, 1986.

. . . .

7. The court may award reasonable attorneys fees and expenses to the prevailing party.

■ Initially, we undertake, *sua sponte*, to determine if *pendente lite* orders from which grandparents appeal are final appealable orders in the context of § 452.402.

Our research reveals that "[t]he law in Missouri is clear that *pendente lite* orders in domestic cases are appealable." *Buder v. Buder*, 824 S.W.2d 483, 485 (Mo.App. 1992), citing *Cross v. Cross*, 790 S.W.2d 928, 930 (Mo.App.1990); *Tzinberg v. Tzinberg*, 631 S.W.2d 681, 682 (Mo.App.1982); and *In re Marriage of Deatherage*, 595 S.W.2d 36, 38 (Mo.App.1980). We recognize none of these cases involve grandparent visitation actions under § 452.402. Yet, the grandparent visitation statute provides for intervention in domestic cases and allows grandparents the right to pursue modification of an original decree. Following either course, grandparents place themselves in domestic cases by requesting visitation with a grandchild. It follows that the *pendente lite* order here arises from a domestic case. Finding no Missouri cases in point we determine the grandparents have presented us with a final appealable order.

■ Although grandparents dismissed their motion after the award for attorney fees and guardian ad litem fees, such action had no effect on the *pendente lite* order. *See Hibdon v. Hibdon*, 589 S.W.2d 646, 647 (Mo.App.1979). Therefore, we review the award on the basis described in *Hoke v. Hoke*, 737 S.W.2d 497–98 (Mo.App. 1987). The award is to be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares or applies the law.

■ Steve only presented evidence of substantial attorney fees incurred during the litigation. However, no evidence was presented reflecting what portion, if any, of those fees were incurred because of the grandparents' motion for visitation. The same thing is true for the guardian ad litem. The grandparents' motion was filed less than one year prior to the November 11, 1990, hearing on Steve's motion for attorney fees. Theda's original motion to modify was filed August 7, 1986, causing Steve to incur attorney fees, presumably, for over four years prior to November 11, 1990. With the record before us we find no evidence to support any award against the grandparents.

It was incumbent upon Steve and the guardian ad litem to show the extent of necessary services and attorney fees rendered in regard to the grandparents' action. Such evidence is necessary "so that the trial court could make an award, at least in part, based on evidence of such services and expenses, and so the appellate court could examine such evidence, in connection with other relevant circumstances, in gauging the propriety of the trial court's discretionary action." *Trapani v. Trapani*, 686 S.W.2d 877, 879 (Mo.App.1985). *See Devries v. Devries*, 804 S.W.2d 825, 828 (Mo.App.1991). "While it is true that a judge is an expert on attorney's fees, an award of attorney's fees and expert's costs must be supported by competent and substantial evidence." *Tepper v. Tepper*, 763 S.W.2d 726 (Mo.App.1989).

Having found no evidence to support the trial court's award of $5,000 to Steve's attorney and $750 to the guardian ad litem, such award is hereby reversed.[3]

### THEDA'S APPEAL, No. 17575

■ Theda's first point contends the trial court erred by making no findings as required by § 452.400.1,[4] and the judgment

---

3. We do not hold nor imply *pendente lite* motions for guardian ad litem and attorney fees are proper during the pendency of an action brought under § 452.402. We have only ruled the trial court's award was unsupported by the evidence if such a motion is proper under the statute.

4. This case involves a motion to modify Theda's visitation rights which makes § 452.400.2 applicable. We will assume Theda's point has reference to that section.

restricting visitation was unsupported by substantial evidence.

We must affirm the trial court's judgment unless it is unsupported by substantial evidence, unless it is against the weight of the evidence, or unless it erroneously applies or declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Section 452.400.2 provides, in part:

The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development.... "**Supervised visitation**", as used in this section, is visitation which takes place in the presence of a responsible adult appointed by the court for the protection of the child.

In *Van Pelt v. Van Pelt*, 824 S.W.2d 135 (Mo.App.1992), the mother in a dissolution action was denied custody and visitation. She appealed claiming no findings were made as required by § 452.400.1.[5] The mother's point was denied based on *Flaton v. Flaton*, 777 S.W.2d 948 (Mo.App.1989), which held that a finding of emotional impairment under § 452.400.2 was " 'implicit in the issuance of the order' " limiting the father's visitation privileges. *Van Pelt* found *Jensen v. Borton*, 734 S.W.2d 580 (Mo.App.1987), applicable because "when a trial court makes no findings of fact, this court must assume that all fact issues were found in accordance with the result." 824 S.W.2d at 137. Further, *Van Pelt* relied on the proposition in *Pemberton v. Pemberton*, 779 S.W.2d 8 (Mo.App.1989), that "[o]n review, an appellate court may render the judgment that should have been rendered by the trial court." 824 S.W.2d at 137. We agree with *Van Pelt* that remand would be an empty act "where the trial court made a correct ruling which lacked the formal statutory requirements...." *Id.*[6]

We determine *Van Pelt* is decisive on Theda's point in that implicit in the trial court's order was a finding of emotional impairment of Chrystal under § 452.400.2. The trial court's findings expressly stated all factors in § 452.400 were considered. The facts recounted in this opinion show the egregious conduct of Theda and need not be repeated. That conduct, plus the testimony of Dr. Reidler, was substantial evidence to show the best interest of Chrystal required supervised visitation. Such overwhelming evidence in this record entirely supports the findings implicit in the trial court's order.

Theda's subpoint complains there is no authority for the trial court to condition visitation on the prepayment of supervision costs. The only case cited on this issue is *Mansell v. Mansell*, 583 S.W.2d 284 (Mo.App.1979), where the father was granted custody of the child. The mother was a resident of California. Aside from visitation in Missouri, the trial court ordered "as a condition of visitation in the State of California, the mother be required to deposit $1500 in cash in the registry of the court, to be released upon the return of the child to her father, with further provision that, in the event of non-return of the child to Missouri, the fund might be paid to the father for expenses in going to California in order to attempt to enforce the Missouri order." *Id.* at 285. This visitation order was reversed because "[n]o statute authorizes the requirement imposed by the trial court for a cash deposit by appellant as a condition of visitation in the State of California." *Id.* at 288.

▮▮▮ *Mansell* does not apply here because supervised visitation was not involved in that case. Here, the trial court found supervised visitation under § 452.400.2 was necessary for the protection of the child. Such visitation is expressly defined by the statute and would necessarily require payment of expenses for supervision. The trial court has broad discretion

---

5. Both paragraphs 1 and 2 of § 452.400 require findings of endangerment of physical health or impairment of emotional development before visitation can be denied or restricted.

6. Like *Van Pelt,* we caution this ruling should not be taken for the proposition that no future cases will be remanded for noncompliance with the statute.

in apportioning the expenses of exercising child custody rights. *Ronzio v. Ronzio,* 673 S.W.2d 100 (Mo.App.1984). Such orders are "reviewed only for a manifest abuse of that discretion." *Id.* at 101. We find no abuse of discretion by the trial court ordering Theda to pay the costs of supervision. Point I is denied.

■ The last point concerns Theda's pro se motion. She urges her motion was an action under Rule 74.06[7] to vacate the judgment for fraud and failure to grant an evidentiary hearing was an abuse of the trial court's discretion.

From Theda's argument we learn her motion should have been treated as an independent action in equity pursuant to Rule 74.06(d). That portion of the rule allows "an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court."

Theda relies only on *Calman v. Calman,* 796 S.W.2d 65 (Mo.App.1990). There, the court set aside a default dissolution decree in favor of husband who obtained service by order of publication. His petition untruthfully claimed he was unaware of wife's address. This case does not support Theda's position.

■ An independent action in equity seeking to set aside a judgment must be based on an extrinsic fraud perpetrated upon the court. *McKarnin v. McKarnin,* 795 S.W.2d 436, 439 (Mo.App.1990). "Moreover, for a judgment to be set aside on the ground of extrinsic fraud, the complaining party must show his [or her] absence of fault, neglect, or inattention to the case." *Vinson v. Vinson,* 725 S.W.2d 121, 124 (Mo.App.1987). Failure of the complaining party to allege he [or she] was free from fault, neglect, or inattention is fatal to the action. *Orrock v. Crouse Realtors, Inc.,* 813 S.W.2d 929, 932 (Mo.App. 1991). Theda's motion contained no such allegations. The trial court did not abuse its discretion by overruling Theda's motion without a hearing. This point has no merit.

7. Rule references are to Missouri Rules of Court

The judgment of the trial court in Appeal No. 17443 is reversed. The judgment in Appeal No. 17575 is affirmed.

FLANIGAN, C.J., and SHRUM, P.J., concur.